| | |
|---|---|
| DISTRICT COURT, COUNTY OF BOULDER<br>STATE OF COLORADO<br>1777 Sixth Street, Boulder, CO 80306<br>(303) 441-3750 | DATE FILED: December 21, 2023 2:37 PM<br>FILING ID: BA6C5F8326211<br>CASE NUMBER: 2023CV31075 |
| **Plaintiffs:** DREW PHILLIP & HANNAH JO FULLER;<br>JASON C. ABAIR; RENEE & GREGORY ALANIZ LIVING<br>TRUST; AMY ALEXANDER; DANIEL & LISA ALLEN;<br>JOSEPH ROBERT ALREAD & ERIKA LIN STENSVAAG;<br>CHRISTIAN PETER & HEATHER ELIZABETH<br>ANDERSEN; PETER GRADY ARNOLD & JAMIE SCHIEL<br>ARNOLD; KIRSI A. AULIN; BRANDON DAVID &<br>HEATHER DAWN BARBER; COLIN R. & LAURA E.<br>BAUKOL; BONNIE J. & RANDALL LOUIS BIRD; SHAWN<br>PAUL & ANNA BISAILLON; CHARLES J. & LINDA D.<br>BLAKELY; THEODOOR P. & ROSALIE T. BOEZAART;<br>BRIAN & MILENA BOUCHARD; HEATHER C.<br>BOUDREAU; ROBERT BOUTELLE & TAYLOR AUBRY<br>KOMIN; RACHAEL S. BRAY; BROGDEN-HUOT LIVING<br>TRUST; DALE T. & LEANNE BROTSKI; SHANA BURACK<br>& BRIAN ANDREW HICKS; KEITH A. BUSCHMANN &<br>SANDRA J. MORRISON; MARC & CRYSTAL CALLIPARI;<br>LIHUA CAO & XUE WEI; DERRICK T. & TRICIA A.<br>CARPENTER; ZHONGMING CHEN & PEIQI HE;<br>MICHAEL CITARELLA; DUSTIN & TERRILL CLYMER;<br>ROBERT R. & LYNN E. CONKLIN; ROBERT W. &<br>LAURIE COOK; MARGO COOPER & EDMUND<br>EISSENSTAT; CESAR AUGUSTO GUERRERO CORDOBA<br>& KATI MARIANNA GUERRERO; ERIC D. COSMOS;<br>NANCY T. & RICHARD W. CRIST III; DANIELLE DAVIS;<br>SERGEY I. DEREVYANKO; MATTHEW S. DEW & LIHUA<br>ZHONG; TODD R. & KATHERINE M. DIERKING;<br>REBECCA & JEFFREY DIMAIO; XIAOYUN DING AND<br>YINAN DENG; RYAN & LAURA DIONNE; INGA CLAIRE<br>DIXON REVOCABLE LIVING TRUST; CHRISTOPHER<br>JAMES & SARAH KAY DRUMMOND; MATTHEW S. &<br>KARIN Y. DUDEK; PATRICIA E. & SEAN M. DUNHAM;<br>THE DURAND LIVING TRUST; CHRISTOPHER AND<br>VICTORIA EDMONSTON; BRIAN & JEANNINE ELLIOTT;<br>SPENCER & BRITTANY EREKSON; KAREN M.<br>FALARDEAU; ADAM & STEFANIE FLACH; MICHAEL &<br>KATHRYN FLOOD; CHRISTOPHER R. AND JENNY R.<br>FOX; ANDREW JAMES FRAZIER & KELLY JEAN | ▲ COURT USE ONLY ▲ |

FRAZIER; WILLIAM GALERSTEIN & ALICE PENTON;
ANUP GANDHI & NIKITA KATARIA; DAWN GARNER;
THE MICHAEL J. GAZARIK LIVING TRUST & THE
MICHELLE V. GAZARIK LIVING TRUST; BROOK Z.
GEBRE-MARIAM; JOSEPH C. GOGAIN JR. & MARTA
SCHILLING-GOGAIN; GOSPODAREK FAMILY TRUST;
JEFFERY E. & DENISE T. GREENE; MICHAEL J. &
CLAIRE M. GREENING; MELISSA & RYAN GROELZ;
STEVEN C. & AMY E. GROSS; GREGORY G. & CANDICE
J. GRUBB; YOUFAN GU, XIAOYAN SHI, & GORDON
SHOUYI GU; MICHELLE & MARC GUSSENBAUER;
LISA-MARIE & ROBERT GUSTOFSON; MARC &
LINDSEY MORRIS GUTMAN REV TRUST; LUCIE
GUYOT REVOCABLE LIVING TRUST; ZAID HADDAD
AND OUMNIA REGHAI HADDAD; YONGXIN HAN &
YINGXIN ZHANG; THOMAS W. HANKS & CLARISSA W.
LIU; TIMOTHY DAVID HANKS & NIMISHA SINHA
HANKS; PETER HAUER & ELIZABETH ANN PARADY;
TAO HE & XIA FANG; JOHN R. & PATRICIA HECKMAN;
LACEY & NATHAN HEDIN; SAUL HERBERT & ELENA
POLOVNIKOVA; THEODORE J. & WHITNEY R.
HILLESTAD; DANIEL & ANDREA HIMMELBERGER;
DAVID A. & LAURA M. HODGSON; ROCHELLE M.
HOFFMAN; JONATHAN D. & JESSICA N. HOOVER;
NICOLE C. & JAMES P. HOWE; ALISON B. HUBBARD;
MAXIMIANO HYNSON LIVING TRUST; CLAYTON &
PATRICIA A. JAMES; VIDYA JAYAKAR & JAI
KUMARAN KUPPUSWAMY CANCHEEVARAM; ROBERT
B. & REBEKAH JAYNE; JASON RAMSEY AND ANDREA
LEANNE JENKINS; LINDSAY H. JOHNSON; MARK A.
JOHNSON; JONATHAN E. JONES, KAREN A. JONES,
MARK FULLER FORDNEY, & JENNIFER MARIE
FORDNEY; SHANNON E. JONES; JORDAAN FAMILY
REVOCABLE TRUST; JZYV REVOCABLE TRUST;
PIYUSH RAMESH KANSARA & PURVI PIYUSH
KANSARA; MORTEZA KARIMZADEH; MARC & LARA
KATZIN; PREMA KHANNA; GEORGE D. & HILLARY
NUSSBAUM KELLOGG; BRIAN & MARY E. KEMP;
TIMOTHY J. KENKEL AND SARAH KENNEDY;
ANDREW & JESSICA KIEHLING; BRIAN DUNCAN
KNOTT; JULIE A. KRAFT; DAVID F. & DENA M.
KRENIK; ERIK & KASIA KREUGER; KARVIN R.
KUFFER; CUO LAN & YONGXIN ZHANG; TODD P. &
CARRIE M. LANDIN; KELLIE & ZACHARY LANGE;

SHANDONG LAO & YAN WANG; JONATHAN L. & CAROLYN A. LASKER; TRACEY L. & MICHELLE D. LEESE; MICHAEL B. & ERICA N. LEIBOVITZ; GREGORY & ANNE-LAURE LEPERE; HUI LI & YIFENG TIAN; HAIDAO LIN & BINXIN XING; YING LIN & GANG QIAN; KRISTIN LISTECKI; SONG LIU & NA WANG; STEVE & TAMI LORD; MICHAEL D. LYNN TRUST & RHONDA C. LYNN TRUST; MICHAEL A. & MICHELLE L. MACISZEWSKI; SEAN D. & IVY L. MADAY; HEATHER N. MALM; RACHEL MATZ; AMANDA & CONNOR MCCLUSKEY; JOHN & KRISTEN MCCORMICK; SARAH & JAY MCMAHON; RYAN A. & AMANDA L. MEDINE; THE JEREMY MIRMELSTEIN REVOCABLE LIVING TRUST & THE ALYSSA WHITCRAFT REVOCABLE LIVING TRUST; H. ALEXANDER MIKISHKO; LYNN M. AND JOHN R. MITTON; KYLE DUNCAN & JULIA ANN MOFFETT; LARS K. & MARCELA J. MORALES; KATHLEEN M. MORIARTY; ANTHONY LEE MYERS JR. & YEN LIN MYERS; ETHAN & BRITTANY NEIL; AUSTIN & KOZUE NORAUSKY; COREY & BECKY OCHSNER LIVING TRUST; BRYAN F. & FRANCES O'LEARY; THOMAS J. & BONNIE J. PARACHINI; BRITT-ANNE & FRANK PARKER; JENNIFER S. PEACOCK; MARC & AMY P. PEDRUCCI; SARAH PELTIER & BRIAN FRUTIG; TARA AND ERIC S. PELTIER; KEVIN J. & DONNA S. PENDLETON; JACQUELINE A. PESA; BARBARA J. PESKIND; ROBERT GATES AND KARA MARIE PHILLIPS; STEPHANIE AND ADAM PHILLIPS; CHRISTOPHER & BETH PLOTT; MICHAEL PRIDDY & ESA CRUMB; SUSAN & DAVID PUJDAK; YONGHAI QIAN & HONGYAN LUO; BRIAN JON & MARY ELIZABETH QUESENBERRY; AZALEE RAFII; LI REN & JIAN WANG; BRIAN C. & MARGARET T. RESCH; COURTNEY KEISTER REYNOLDS & JOHN LEE REYNOLDS IV; TIMOTHY A. & MARYELLEN F. REZVAN; BRANNON H. & LANA P. RICHARDS; RIVINUS FAMILY REVOCABLE TRUST; CHRISTOPHER J. & GABRIELLE L. ROBBIE; JESSICA & MICHAEL ROCKWAY; MARK J. & KIMBERLY A. RUND; DANIEL SALIMBENE & TARA CIBELLI; GEOFFREY R. SANDFORT & AMBER N. GREVES; SACHIN & MANISHA SANGVIKAR; ALICE C. SANTMAN; JUSTIN RICHARD & STEPHANIE ERIN SATIN; JOEL DAVID SAYRES; SHANE & MELANIE SCHIEFFER; ANDREW L. SCHIFLE &

| | |
|---|---|
| JENNIFER F. TUEY; BLAKE & SUSAN T. SCHMIDT; BENJAMIN AND ELIZABETH SCHNEIDER; STEVEN JAMES & JACLYN MARIE SCHULTZ; JOSHUA B. & LORI B. SCOTT; SUSAN M. SEIGEL; DANIEL J. SHAY & ANNALISSA PHILBIN; ANDREW W. SIEGMUND & MARTHA J. SCHELER; SURAJ SINGH & MOLLY E. MILLETT; SOMASUNDARAM SUNDARAM & KAVITHA SOMASUNDARAM; JOHN W. & RACHEL E. STANTON; CHAD & DARCEY SYPOLT REVOCABLE TRUST; BRIAN AND LINDSEY TAYLOR; CHRISTIAN R. & CHRISTINA L. TENEROWICZ; JEFFREY & KRISTY THOMPSON; TRACY L. TROCH; SHAWN & JOYCE UHLENHAKE; PRABHU VELAYUTHAM & RAJALAKSHMI NATARAJAN; NORBERT VER & MARIA KOUZMINA; ADAM AND SARAH VONNAHME; JUNGANG WANG & ZHUXIAO LI; QI WANG & JUANJUAN ZHU; SHUAIHANG WANG AND ANDREW AUDIBERT LIVING TRUST; WEI WANG & YUEFENG GAO; XI WANG & RAN SHI; YIYUAN WANG & YIFAN CHENG; MARK JAMES & BRIDGETT ANNE WEIDNER; DAVID & MICHELE WEINGARDEN; JOEL AND JILL L. WHITE; ZOE & BRIAN WHITMORE; SEAN WILCOX; JESSICA L. WILLIAMS; KYLE L. WILLIAMS; STEVE & MERRY WOLF TRUST; MINMING WU & HONG LI; MING XIE & HUILIN FENG; NATHAN YECKE; XIAOJUN YIN & JING LU; MICHAEL R. & ANN MARIE YOUNCE; ANDREA E. YOUNG; CHRISTOPHER G. & ROBYN C. YORK; JEFFREY C. ZABEL REVOCABLE TRUST & THE SARAH M. ZABEL REVOCABLE TRUST; WEIPING ZHAO; XIAOWEI ZHENG;<br><br>v.<br><br>**Defendant:** JEFFERSON COUNTY, COLORADO, as successor in interest to the Jefferson County Airport Authority. | |

| | |
|---|---|
| *Attorneys for Plaintiffs*<br>John R. Sperber, #22073<br>Sean J. Metherell, #47438<br>Rebecca A.R. Smith, #52501<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>1144 Fifteenth Street, Suite 3400<br>Denver, CO 80202<br>Telephone Number: (303) 607-3500<br>jack.sperber@faegredrinker.com<br>sean.metherell@faegredrinker.com<br>becca.smith@faegredrinker.com | |

**COMPLAINT AND JURY DEMAND**

Plaintiffs named in the caption and identified further below (collectively, "Homeowners"), by and through their attorneys, Faegre Drinker Biddle & Reath LLP, allege as follows:

**Introduction**

1.     This is an inverse condemnation lawsuit seeking just compensation for hundreds of individual Homeowners who have been substantially deprived of the use and enjoyment of their homes and properties (collectively, "Properties") because of Defendant's ongoing airport operations.

2.     An inverse condemnation action is a special statutory proceeding that is to be tried as if it were an eminent domain proceeding, which concerns only issues relating to the just compensation owed for governmental use of private property and cannot address collateral issues that change the scope of the proceedings. *See Ossman v. Mountain States Tel. & Tel. Co.*, 520 P.2d 738, 742 (Colo. 1974); *Dep't of Transp. v. Auslaender*, 94 P.3d 1239, 1241 (Colo. App. 2004).

3.     Defendant, Jefferson County, Colorado, as successor in interest to the Jefferson County Airport Authority (the "County"), owns and operates the Rocky Mountain Metropolitan Airport ("Airport").

4.     The Airport is the third-busiest airport in the state of Colorado. In 2022 (the most recent year for which such data is publicly available), on average, the Airport experienced a takeoff or landing every two minutes.

5.     Through its Airport, the County engages in flight operations through, over, and across the Properties (collectively, "Airport Operations") despite the County lacking avigation easements or any other property right permitting it to do so.

6.      The airspace above a property is included within the bundle of rights owned by landowners. For a property located in a rural area, landowners own the airspace up to 500 feet; in a congested area, they own the airspace up to 1,000 feet. Navigable airspace exists above those thresholds and is generally considered part of the public domain.

7.      Here, the Homeowners own the airspace up to 1,000 feet above the Properties ("Homeowners' Airspace").

8.      Easements allowing the County to use the Homeowners' Airspace for flights and other airplane-caused impacts on the Properties previously existed at one time. But an increase in Airport Operations overburdened these prior easements, and a Boulder County District Court determined that 9 of 29 prior easements were terminated according to their terms (the "Terminated Easements"). *See Rock Creek Master Homeowners Ass'n, Inc. v. Jefferson Cnty.*, 20CV30837, *order aff'd Rock Creek v. Jefferson*, 22CA602 (unpublished pursuant to C.A.R. 35(e)) on June 15, 2023).

9.      Despite that District Court order, the County has continued its Airport Operations as though the Terminated Easements were still in full legal force and effect. The County has not sought new easement rights from Homeowners or offered to pay them just compensation for the continued Airport Operations.

10.     In fact, the County has significantly increased the amount and intensity of its Airport Operations ever since the prior easements were terminated, including using the Airport for flight school training flights that include frequent low-flying airplanes engaging in "touch and go" takeoff and landing exercises with planes flying in a racetrack looping pattern through, over, and across the Properties and Homeowners' Airspace at all hours of the day and night.

11.     It is commonplace for the Airport Operations to include planes making 10-15 loops in a single training flight, and there can be multiple training flights in a pattern at once, resulting in significant invasions of Homeowners' Airspace. Some Homeowners have tracked 20-40 "touch and go" takeoffs and landings by a single plane during a training flight. Recently, one plane did 58 loops during a single training flight.

12.     These increased Airport Operations have caused excessive noise, vibrations, fuel pollution, and other airplane-created impacts (collectively, "Airport Impacts"), which directly and substantially interfere with the Homeowners' use and enjoyment of their Properties and that significantly affect the marketability and value of the Properties.

13.     The flights also drop lead particulates found in the aviation fuel used by small planes directly onto the Properties, causing an ongoing physical occupation of the Properties, raising serious health concerns, and again directly and substantially interfering with the Homeowners' use and enjoyment of their Properties and significantly affecting the marketability and value of the Properties.

14.     In addition to the physical invasions of the Homeowners' Airspace and Properties, the Properties also suffer from damaging impacts caused by the Airport Impacts described above, significantly affecting the marketability and value of the Properties.

15.     The County has continued its Airport Operations with full knowledge that it lacks property rights to invade the Homeowners' Airspace, homes, and land; and with full knowledge of the impacts such operations have on the Properties.

16.     Even though the Airport Operations are creating greater burdens now than when the prior easements were terminated, the Airport Operations are projected to continue increasing each year. The County has not sought new easements from Homeowners or offered to pay them just compensation for this further taking and damaging of Homeowners' Properties.

17.     Because the County is a governmental entity with eminent domain power and is operating the Airport for a purported public purpose, the Airport Operations and Airport Impacts constitute the taking and damaging of Homeowners' constitutionally protected property rights, which requires the payment of just compensation under the Colorado Constitution.

18.     Colo. Const. art. II, § 15 provides even greater protections to property owners than the U.S. Constitution, by allowing just compensation to be awarded to property owners for both the direct taking of their properties ***and*** for the damaging of their properties caused by public improvements and activities.

19.     The Homeowners accordingly file this Complaint and Jury Demand for inverse condemnation. They seek a ruling from the Court that interests in their Properties have been taken and damaged, as those terms are used under Colorado law; defining with particularity the scope of the rights that have been permanently or temporarily taken; and setting a valuation trial to a jury to determine the just compensation owed to the Homeowners. They also seek the award of their attorney fees, expert and other litigation costs, statutory interest as provided for by law, and other appropriate relief.

## Parties

20.     The following 16 pages identify the parties to this lawsuit. The factual allegations begin on page 23 of this Complaint.

21.     The County is now and, at all times relevant herein, was the owner and operator of the Airport, formerly the Jefferson County Airport until its name was changed in 2006.

22.     The County is the successor in interest to the Jefferson County Airport Authority ("County Authority"), which first opened the Airport in 1960 and owned and operated the airport until 1998.

23.     The following Plaintiffs' properties are in Zone 3 as depicted on the Town of Superior Development Map (attached as **Exhibit A**), and at one time were burdened by an Avigation Easement Agreement dated May 1, 1992, and recorded on May 4, 1992, in Jefferson County at reception number 92051546 (attached as **Exhibit B**):

(1)     Inga Claire Dixon Revocable Living Trust owns the property at 1860 Vernon Lane, Superior, CO 80027;

(2)     Christopher and Victoria Edmonston own the property at 1955 Eldorado Circle, Superior, CO 80027;

(3)     Ryan A. and Amanda L. Medine own the property at 1560 Masters Court, Superior, CO 80027;

(4)     Tara and Eric S. Peltier own the property at 540 Campo Way, Superior, CO 80027;

(5)     Yonghai Qian and Hongyan Luo own the property at 550 Campo Way, Superior, CO 80027; and

(6)     Joel and Jill L. White own the property at 1970 Eldorado Circle, Superior, CO 80027.

24.     The following Plaintiffs' properties are in Zone 10 as depicted on Exhibit A. The Avigation Easement Agreement labeled Exhibit B also burdened these properties at one time:

(1)     Joseph Robert Alread and Erika Lin Stensvaag own the property at 2200 Keota Lane, Superior, CO 80027;

(2)     Xiaoyun Ding and Yinan Deng own the property at 2259 Jarosa Lane, Superior, CO 80027;

(3)     Christopher R. and Jenny R. Fox own the property at 2090 Keota Lane, Superior, CO 80027;

(4)     Zaid Haddad and Oumnia Reghai Haddad own the property at 2285 Keota Lane, Superior, CO 80027;

(5)     Jason Ramsey and Andrea Leanne Jenkins own the property at 2188 Imperial Lane, Superior, CO 80027;

(6)     Lynn M. and John R. Mitton own the property at 2105 Keota Lane, Superior, CO 80027;

(7)     Benjamin and Elizabeth Schneider own the property at 2183 Imperial Lane, Superior, CO 80027; and

(8)     Xiaowei Zheng owns the property at 2064 Jarosa Lane, Superior, CO 80027.

25.     The following Plaintiffs' properties are in Zone 13 as depicted on Exhibit A, and at one time were burdened by an Avigation Easement Agreement dated October 6, 1992, and recorded on October 9, 1992, in Boulder County at reception number 01227934 (attached as **Exhibit C**):

(1)     Brandon David and Heather Dawn Barber own the property at 916 Monroe Way, Superior, CO 80027;

(2)     Brogden-Huot Living Trust owns the property at 982 Eldorado Drive, Superior, CO 80027;

(3)     Lihua Cao and Xue Wei own the property at 2264 Lasalle Street, Superior, CO 80027;

(4)     Zhongming Chen and Peiqi He own the property at 983 Northern Way, Superior, CO 80027;

(5)     Steven C. and Amy E. Gross own the property at 1057 Eldorado Drive, Superior, CO 80027;

(6)     Marc and Lindsey Morris Gutman Rev Trust owns the property at 1062 Eldorado Drive, Superior, CO 80027;

(7)     Tao He and Xia Fang own the property at 2044 Lasalle Street, Superior, CO 80027;

(8)     John R. and Patricia Heckman own the property at 1042 Eldorado Drive, Superior, CO 80027;

(9)     Maximiano Hynson Living Trust owns the property at 962 Eldorado Drive, Superior, CO 80027;

(10)     Robert B. and Rebekah Jayne own the property at 1102 Eldorado Drive, Superior, CO 80027;

(11)     Jonathan E. Jones, Karen A. Jones, Mark Fuller Fordney, and Jennifer Marie Fordney own the property at 981 Monroe Way, Superior, CO 80027;

(12)     Todd P. and Carrie M. Landin own the property at 2224 Lasalle Street, Superior, CO 80027;

(13)     Kyle Duncan and Julia Ann Moffett own the property at 1122 Eldorado Drive, Superior, CO 80027;

(14)    Anthony Lee Myers Jr. and Yen Lin Myers own the property at 1026 Monroe Way, Superior, CO 80027;

(15)    Thomas J. and Bonnie J. Parachini own the property at 2084 Lasalle Street, Superior, CO 80027;

(16)    Kevin J. and Donna S. Pendleton own the property at 922 Eldorado Drive, Superior, CO 80027;

(17)    Barbara J. Peskind owns the property at 941 Monroe Way, Superior, CO 80027;

(18)    Li Ren and Jian Wang own the property at 1016 Monroe Way, Superior, CO 80027;

(19)    Christopher J. and Gabrielle L. Robbie own the property at 762 Eldorado Drive, Superior, CO 80027;

(20)    Daniel Salimbene and Tara Cibelli own the property at 2219 Lasalle Street, Superior, CO 80027;

(21)    Susan M. Seigel owns the property at 969 Monarch Way, Superior, CO 80027;

(22)    John W. and Rachel E. Stanton own the property at 2239 Lasalle Street, Superior, CO 80027;

(23)    Adam and Sarah Vonnahme own the property at 2204 Lasalle Street, Superior, CO 80027;

(24)    Shuaihang Wang and Andrew Audibert Living Trust owns the property at 954 Lasalle Street, Superior, CO 80027;

(25)    Ming Xie and Huilin Feng own the property at 914 Lasalle Street, Superior, CO 80027; and

(26)    Weiping Zhao owns the property at 1006 Monroe Way, Superior, CO 80027.

26.    The following Plaintiffs' properties are in Zone 15 as depicted on Exhibit A, and at one time were burdened by an Avigation Easement Agreement dated July 29, 1993, and recorded on August 10, 1992, in Boulder County at reception number 01323785, and also recorded on July 30, 1993, in Jefferson County at reception number 93113570 (attached as **Exhibit D**):

(1)    Renee and Gregory Alaniz Living Trust owns the property at 618 Eaton Circle, Superior, CO 80027;

(2)     Amy Alexander owns the property at 508 Eaton Circle, Superior, CO 80027;

(3)     Rachael S. Bray owns the property at 2355 Andrew Drive, Superior, CO 80027;

(4)     Margo Cooper and Edmund Eissenstat own the property at 518 Eaton Circle, Superior, CO 80027;

(5)     Matthew S. Dew and Lihua Zhong own the property at 494 Briggs Place, Superior, CO 80027;

(6)     Spencer and Brittany Erekson own the property at 528 Eaton Circle, Superior, CO 80027;

(7)     Anup Gandhi and Nikita Kataria own the property at 653 Eaton Circle, Superior, CO 80027;

(8)     Thomas W. Hanks and Clarissa W. Liu own the property at 509 Briggs Place, Superior, CO 80027;

(9)     Maximiano Hynson Living Trust owns the property at 2225 Andrew Drive, Superior, CO 80027;

(10)    Mark A. Johnson own the property at 2560 Clayton Circle, Superior, CO 80027;

(11)    Cuo Lan and Yongxin Zhang own the property at 578 Eaton Circle, Superior, CO 80027;

(12)    Steve and Tami Lord own the property at 549 Briggs Place, Superior, CO 80027;

(13)    Bryan F. and Frances O'Leary own the property at 2221 Dailey Street, Superior, CO 80027;

(14)    Michael Priddy and Esa Crumb own the property at 2236 Dailey Street, Superior, CO 80027;

(15)    Sachin and Manisha Sangvikar own the property at 613 Eaton Circle, Superior, CO 80027;

(16)    Christian R. and Christina L. Tenerowicz own the property at 415 Andrew Way, Superior, CO 80027;

(17)   Qi Wang and Juanjuan Zhu own the property at 2370 Andrew Drive, Superior, CO 80027;

(18)   Wei Wang and Yuefeng Gao own the property at 2261 Dailey Street, Superior, CO 80027; and

(19)   Sean Wilcox owns the property at 1981 Dailey Lane, Superior, CO 80027.

27.   The following Plaintiffs' properties are in Zone 18 as depicted on Exhibit A, and at one time were burdened by an Avigation Easement Agreement dated June 6, 1995, and recorded on July 19, 1995, in Boulder County at reception number 01531881 (attached as **Exhibit E**):

(1)   Charles J. and Linda D. Blakely own the property at 1500 Aster Court, Superior, CO 80027;

(2)   Brian and Milena Bouchard own the property at 3145 E. Yarrow Circle, Superior, CO 80027;

(3)   Dale T. and Leanne Brotski own the property at 1476 Vinca Place, Superior, CO 80027;

(4)   Derrick T. and Tricia A. Carpenter own the property at 1532 Hyacinth Way, Superior, CO 80027;

(5)   Michael Citarella owns the property at 1544 Aster Court, Superior, CO, 80027;

(6)   Sergey I. Derevyanko owns the property at 1509 Aster Court, Superior, CO 80027;

(7)   Ryan and Laura Dionne own the property at 2954 Basil Place, Superior, CO 80027;

(8)   The Durand Living Trust owns the property at 2942 W. Yarrow Circle, Superior, CO 80027;

(9)   Adam and Stefanie Flach own the property at 3216 Goldeney Place, Superior, CO 80027;

(10)   Jeffery E. and Denise T. Greene own the property at 1512 Snapdragon Court, Superior, CO 80027;

(11)   Gregory G. and Candice J. Grubb own the property at 3257 W. Yarrow Circle, Superior, CO 80027;

(12)    Youfan Gu, Xiaoyan Shi, and Gordon Shouyi Gu own the property at 1519 Ivy Place, Superior, CO 80027;

(13)    Peter Hauer and Elizabeth Ann Parady own the property at 1429 Aster Court, Superior, CO 80027;

(14)    Saul Herbert and Elena Polovnikova own the property at 3007 W. Yarrow Circle, Superior, CO 80027;

(15)    Daniel and Andrea Himmelberger own the property at 1426 Vinca Place, Superior, CO 80027;

(16)    David A. and Laura M. Hodgson own the property at 1519 Aster Court, Superior, CO 80027;

(17)    Jordaan Family Revocable Trust recently sold the property at 1419 Aster Court, Superior, CO 80027;

(18)    Morteza Karimzadeh owns the property at 3022 W. Yarrow Circle, Superior, CO, 80027;

(19)    Brian Duncan Knott owns the property at 3030 E. Yarrow Circle, Superior, CO 80027;

(20)    Julie A. Kraft owns the property at 3131 Gardenia Way, Superior, CO 80027;

(21)    Kristin Listecki owns the property at 3121 Gardenia Way, Superior, CO 80027;

(22)    Heather N. Malm owns the property at 2922 W. Yarrow Circle, Superior, CO 80027;

(23)    The Jeremy Mirmelstein Revocable Living Trust and the Alyssa Whitcraft Revocable Living Trust own the property at 1459 Aster Court, Superior, CO 80027;

(24)    Kathleen M. Moriarty owns the property at 1457 Hyacinth Way, Superior, CO 80027;

(25)    Susan and David Pujdak own the property at 2929 Basil Place, Superior, CO 80027;

(26)    Brannon H. and Lana P. Richards own the property at 3277 W. Yarrow Circle, Superior, CO 80027;

(27)    Jessica and Michael Rockway own the property at 1529 Ivy Place, Superior, CO 80027;

(28)    Steven James and Jaclyn Marie Schultz own the property at 3137 W. Yarrow Circle, Superior, CO 80027;

(29)    Andrew W. Siegmund and Martha J. Scheler own the property at 3032 W. Yarrow Circle, Superior, CO 80027;

(30)    Yiyuan Wang and Yifan Cheng own the property at 3132 W. Yarrow Circle, Superior, CO 80027;

(31)    Zoe and Brian Whitmore own the property at 1564 Aster Court, Superior, CO 80027;

(32)    Jessica L. Williams owns the property at 1449 Aster Court, Superior, CO 80027;

(33)    Minming Wu and Hong Li own the property at 3117 W. Yarrow Circle, Superior, CO 80027;

(34)    Nathan Yecke owns the property at 3141 Goldeneye Place, Superior, CO 80027; and

(35)    Xiaojun Yin and Jing Lu own the property at 3125 E. Yarrow Circle, Superior, CO 80027.

28.    The following Plaintiffs' properties are in Zone 19 as depicted on Exhibit A, and at one time were burdened by an Avigation Easement Agreement dated September 27, 1995, and recorded on October 10, 1995, in Boulder County at reception number 01551661, and also recorded on October 19, 1995, in Boulder County at reception number 01556192 (attached as **Exhibit F**):

(1)    Jason C. Abair owns the property at 2921 Silver Place, Superior, CO 80027;

(2)    Christian Peter and Heather Elizabeth Andersen own the property at 2812 Flint Court, Superior, CO 80027;

(3)    Peter Grady Arnold and Jamie Schiel Arnold own the property at 2724 N. Torreys Peak Drive, Superior, CO 80027;

(4)    Marc and Crystal Callipari own the property at 2862 Flint Court, Superior, CO 80027;

(5)    Nancy T. and Richard W. Crist III own the property at 713 Gold Way, Superior, CO 80027;

(6)     Todd R. and Katherine M. Dierking owhn the property at 2778 Slate Court, Superior, CO 80027;

(7)     Rebecca and Jeffrey Dimaio own the property at 2918 Marble Lane, Superior, CO 80027;

(8)     Christopher James and Sarah Kay Drummond own the property at 2938 Marble Lane, Superior, CO 80027;

(9)     Michael and Kathryn Flood own the property at 733 Gold Way, Superior, CO 80027;

(10)    The Michael J. Gazarik Living Trust and The Michelle V. Gazarik Living Trust own the property at 2788 Slate Court, Superior, CO 80027;

(11)    Michael J. and Claire M. Greening own the property at 2940 N. Torreys Peak Drive, Superior, CO 80027;

(12)    Lisa-Marie and Robert Gustofson own the property at 699 Flagstone Place, Superior, CO 80027;

(13)    Lucie Guyot Revocable Living Trust owns the property at 2801 Silver Place, Superior, CO 80027;

(14)    Yongxin Han and Yingxin Zhang own the property at 734 Topaz Street, Superior, CO 80027;

(15)    Timothy David Hanks and Nimisha Sinha Hanks own the property at 2925 N. Torreys Peak Drive, Superior, CO 80027;

(16)    Theodore J. and Whitney R. Hillestad own the property at 934 Topaz Street, Superior, CO 80027;

(17)    Clayton and Patricia A. James own the property at 2838 Marble Lane, Superior, CO 80027;

(18)    Lindsay H. Johnson owns the property at 939 Topaz Street, Superior, CO 80027;

(19)    JZYV Revocable Trust owns the property at 2826 Silver Place, Superior, CO 80027;

(20)    Marc and Lara Katzin own the property at 2706 Silver Place, Superior, CO 80027;

(21)     George D. and Hillary Nussbaum Kellogg own the property at 2832 Flint Court, Superior, CO 80027;

(22)     David F. and Dena M. Krenik own the property at 944 Topaz Street, Superior, CO 80027;

(23)     Erik and Kasia Kreuger own the property at 2817 N. Torreys Peak Drive, Superior, CO 80027;

(24)     Kellie and Zachary Lange own the property at 2930 N. Torreys Peak Drive, Superior, CO 80027;

(25)     Shandong Lao and Yan Wang own the property at 2849 Quartz Way, Superior, CO 80027;

(26)     Michael B. and Erica N. Leibovitz own the property at 718 Gold Way, Superior, CO 80027;

(27)     Song Liu and Na Wang own the property at 2822 N. Torreys Peak Drive, Superior, CO 80027;

(28)     Robert Gates and Kara Marie Phillips own the property at 719 Flagstone Place, Superior, CO 80027;

(29)     Stephanie and Adam Phillips own the property at 961 Sapphire Way, Superior, CO 80027;

(30)     Christopher and Beth Plott own the property at 2913 Marble Lane, Superior, CO 80027;

(31)     Brian Jon and Mary Elizabeth Quesenberry own the property at 2950 N. Torreys Peak Drive, Superior, CO 80027;

(32)     Timothy A. and Maryellen F. Rezvan own the property at 2754 N. Torreys Peak Drive, Superior, CO 80027;

(33)     Mark J. and Kimberly A. Rund own the property at 2828 Marble Lane, Superior, CO 80027;

(34)     Justin Richard and Stephanie Erin Satin own the property at 2733 Slate Court, Superior, CO 80027;

(35)     Shane and Melanie Schieffer own the property at 2852 Flint Court, Superior, CO 80027;

(36)     Suraj Singh and Molly E. Millett own the property at 919 Topaz Street, Superior, CO 80027;

(37)     David and Michele Weingarden own the property at 2716 Silver Place, Superior, CO 80027;

(38)     Steve and Merry Wolf Trust owns the property at 728 Gold Way, Superior, CO 80027;

(39)     Ming Xie and Huilin Feng own the property at 3040 N. Torreys Peak Drive, Superior, CO 80027;

(40)     Christopher G. and Robyn C. York own the property at 2817 Flint Court, Superior, CO 80027; and

(41)     Jeffrey C. Zabel Revocable Trust and the Sarah M. Zabel Revocable Trust own the property at 2842 Flint Court, Superior, CO 80027.

29.     The following Plaintiffs' properties are in Zone 21 as depicted on Exhibit A, and at one time were burdened by an Avigation Easement Agreement dated December 6, 1995, and recorded on December 7, 1995, in Boulder County at reception number 01567720 (attached as **Exhibit G**):

(1)     Daniel and Lisa Allen own the property at 838 Maroon Peak Circle, Superior, CO 80027;

(2)     Kirsi A. Aulin owns the property at 949 Windom Peak Drive, Superior, CO 80027;

(3)     Colin R. and Laura E. Baukol own the property at 723 Maroon Peak Circle, Superior, CO 80027;

(4)     Bonnie J. and Randall Louis Bird own the property at 2911 Castle Peak Avenue, Superior, CO 80027;

(5)     Shawn Paul and Anna Bisaillon own the property at 3444 Huron Peak Avenue, Superior, CO 80027;

(6)     Theodoor P. and Rosalie T. Boezaart own the property at 920 Cobalt Way, Superior, CO 80027;

(7)     Heather C. Boudreau owns the property at 1008 Huron Peak Avenue, Superior, CO 80027;

(8)     Robert Boutelle and Taylor Aubry Komin own the property at 3744 Gypsum Court, Superior, CO 80027;

(9)     Shana Burack and Brian Andrew Hicks own the property at 1016 Sapphire Way, Superior, CO 80027;

(10)     Keith A. Buschmann and Sandra J. Morrison own the property at 3692 Blanca Peak Drive, Superior, CO 80027;

(11)     Dustin and Terrill Clymer own the property at 956 Shavano Peak Drive, Superior, CO 80027;

(12)     Robert R. and Lynn E. Conklin own the property at 721 Graphite Way, Superior, CO 80027;

(13)     Robert W. and Laurie Cook own the property at 927 Sandstone Way, Superior, CO 80027;

(14)     Cesar Augusto Guerrero Cordoba and Kati Marianna Guerrero own the property at 863 Maroon Peak Circle, Superior, CO 80027;

(15)     Eric D. Cosmos owns the property at 3624 Huron Peak Avenue, Superior, CO 80027;

(16)     Danielle Davis owns the property at 864 Sunlight Way, Superior, CO 80027;

(17)     Danielle Davis also owns the property at 915 Cobalt Way, Superior, CO 80027;

(18)     Matthew Dew and Lihua Zhong own the property at 3420 Castle Peak Avenue, Superior, CO 80027;

(19)     Matthew S. and Karin Y. Dudek own the property at 910 Cobalt Way, Superior, CO 80027;

(20)     Patricia E. and Sean M. Dunham own the property at 3574 Huron Peak Avenue, Superior, CO 80027;

(21)     Brian and Jeannine Elliott own the property at 711 Graphite Way, Superior, CO 80027;

(22)     Karen M. Falardeau owns the property at 743 Maroon Peak Circle, Superior, CO 80027;

(23)     Andrew James Frazier and Kelly Jean Frazier own the property at 823 Maroon Peak Circle, Superior, CO 80027;

(24)    Drew Phillip and Hannah Jo Fuller own the property at 928 Grays Peak Drive, Superior, CO 80027;

(25)    William Galerstein and Alice Penton own the property at 3113 Castle Peak Avenue, Superior, CO 80027;

(26)    Dawn Garner owns the property at 3615 Huron Peak Avenue, Superior, CO 80027;

(27)    Brook Z. Gebre-Mariam owns the property at 814 Sunlight Way, Superior, CO 80027;

(28)    Joseph C. Gogain Jr. and Marta Schilling-Gogain own the property at 938 Grays Peak Drive, Superior, CO 80027;

(29)    Gospodarek Family Trust owns the property at 948 Huron Peak Avenue, Superior, CO 80027;

(30)    Melissa and Ryan Groelz own the property at 831 Maroon Peak Circle, Superior, CO 80027;

(31)    Michelle and Marc Gussenbauer own the property at 843 Grays Peak Drive, Superior, CO 80027;

(32)    Lacey and Nathan Hedin own the property at 703 Maroon Peak Circle, Superior, CO 80027;

(33)    David A. and Laura M. Hodgson own the property at 3240 Basalt Court, Superior, CO 80027;

(34)    Rochelle M. Hoffman owns the property at 2987 Shale Court, Superior, CO 80027;

(35)    Jonathan D. and Jessica N. Hoover own the property at 3188 Castle Peak Avenue, Superior, CO 80027;

(36)    Nicole C. and James P. Howe own the property at 916 Shavano Peak Drive, Superior, CO 80027;

(37)    Alison B. Hubbard owns the property at 3230 Huron Peak Avenue, Superior, CO 80027;

(38)    Vidya Jayakar and Jai Kumaran Kuppuswamy Cancheevaram own the property at 3153 Castle Peak Avenue, Superior, CO 80027;

(39)     Shannon E. Jones owns the property at 3122 Cimarron Place, Superior, CO 80027;

(40)     Piyush Ramesh Kansara and Purvi Piyush Kansara own the property at 3335 Castle Peak Avenue, Superior, CO 80027;

(41)     Prema Khanna owns the property at 833 Maroon Peak Circle, Superior, CO 80027;

(42)     Brian and Mary E. Kemp own the property at 853 Maroon Peak Circle, Superior, CO 80027;

(43)     Timothy J. Kenkel and Sarah Kennedy own the property at 3614 Huron Peak Avenue, Superior, CO 80027;

(44)     Andrew and Jessica Kiehling own the property at 3137 Cimarron Place, Superior, CO 80027;

(45)     Karvin R. Kuffer owns the property at 3050 Huron Peak Avenue, Superior, CO 80027;

(46)     Jonathan L. and Carolyn A. Lasker own the property at 3645 Huron Peak Avenue, Superior, CO 80027;

(47)     Tracey L. and Michelle D. Leese own the property at 933 Grays Peak Drive, Superior, CO 80027;

(48)     Gregory and Ann-Laure Lepere own the property at 935 Cobalt Way, Superior, CO 80027;

(49)     Hui Li and Yifeng Tian own the property at 3238 Castle Peak Avenue, Superior, CO 80027;

(50)     Haidao Lin and Binxin Xing own the property at 3140 Huron Peak Ave, Superior, CO 80027;

(51)     Ying Lin and Gang Qian own the property at 3507 Blanca Peak Court, Superior, CO 80027;

(52)     Michael D. Lynn Trust and Rhonda C. Lynn Trust own the property at 3280 Basalt Court, Superior, CO 80027;

(53)     Michael A. and Michelle L. Maciszewski own the property at 3148 Castle Peak Avenue, Superior, CO 80027;

(54)    Sean D. and Ivy L. Maday own the property at 946 Shavano Peak Drive, Superior, CO 80027;

(55)    Rachel Matz owns the property at 3173 Castle Peak Avenue, Superior, CO 80027;

(56)    Amanda and Connor McCluskey own the property at 3158 Castle Peak Avenue, Superior, CO 80027;

(57)    John and Kristen McCormick own the property at 2931 Castle Peak Avenue, Superior, CO 80027;

(58)    Sarah and Jay McMahon own the property at 783 Maroon Peak Circle, Superior, CO 80027;

(59)    H. Alexander Mikishko owns the property at 3822 S. Torreys Peak Drive, Superior, CO 80027;

(60)    Lars K. and Marcela J. Morales own the property at 908 Maroon Peak Circle, Superior, CO 80027;

(61)    Ethan and Brittany Neil own the property at 2861 Castle Peak Avenue, Superior, CO 80027;

(62)    Austin and Kozue Norausky own the property at 3467 Blanca Peak Court, Superior, CO 80027;

(63)    Corey and Becky Ochsner Living Trust owns the property at 918 Maroon Peak Circle, Superior, CO 80027;

(64)    Britt-Anne and Frank Parker own to the property at 2946 Castle Peak Avenue, Superior, CO 80027;

(65)    Jennifer S. Peacock owns the property at 900 Cobalt Way, Superior, CO 80027;

(66)    Marc and Amy P. Pedrucci own the property at 913 Grays Peak Drive, Superior, CO 80027;

(67)    Sarah Peltier and Brian Frutig own the property at 963 Huron Peak Avenue, Superior, CO 80027;

(68)    Jacqueline A. Pesa owns the property at 3133 Castle Peak Avenue, Superior, CO 80027;

(69)     Azalee Rafii owns the property at 3664 Huron Peak Avenue, Superior, CO 80027;

(70)     Li Ren and Jian Wang own the property at 833 Grays Peak Drive, Superior, CO 80027;

(71)     Brian C. and Margaret T. Resch own the property at 3142 Cimarron Place, Superior, CO 80027;

(72)     Courtney Keister Reynolds and John Lee Reynolds IV own the property at 3315 Castle Peak Avenue, Superior, CO 80027;

(73)     Rivinus Family Revocable Trust owns the property at 3143 Castle Peak Avenue, Superior, CO 80027;

(74)     Geoffrey R. Sandfort and Amber N. Greves own the property at 3729 Gypsum Court, Superior, CO 80027;

(75)     Alice C. Santman owns the property at 3549 Huron Peak Avenue, Superior, CO 80027;

(76)     Joel David Sayres owns the property at 3172 Cimarron Place, Superior, CO 80027;

(77)     Andrew L. Schifle and Jennifer F. Tuey own the property at 718 Maroon Peak Circle, Superior, CO 80027;

(78)     Blake and Susan T. Schmidt own the property at 3325 Castle Peak Avenue, Superior, CO 80027;

(79)     Joshua B. and Lori B. Scott own the property at 2966 Castle Peak Avenue, Superior, CO 80027;

(80)     Daniel J. Shay and Annalissa Philbin own the property at 978 Huron Peak Avenue, Superior, CO 80027;

(81)     Somasundaram Sundaram and Kavitha Somasundaram own the property at 3652 Blanca Peak Drive, Superior, CO 80027;

(82)     Chad and Darcey Sypolt Revocable Trust owns the property at 3110 Huron Peak Avenue, Superior, CO 80027;

(83)     Brian and Lindsey Taylor own the property at 848 Maroon Peak Circle, Superior, CO 80027;

(84)    Jeffrey and Kristy Thompson own the property at 3100 Huron Peak Avenue, Superior, CO 80027;

(85)    Tracy L. Troch owns the property at 3163 Castle Peak Avenue, Superior, CO 80027;

(86)    Shawn and Joyce Uhlenhake own the property at 804 Sunlight Way, Superior, CO 80027;

(87)    Prabhu Velayutham and Rajalakshmi Natarajan own the property at 3525 Castle Peak Avenue, Superior, CO 80027;

(88)    Norbert Ver and Maria Kouzmina own the property at 3103 Castle Peak Avenue, Superior, CO 80027;

(89)    Jungang Wang and Zhuxiao Li own the property at 1043 Huron Peak Avenue, Superior, CO 80027;

(90)    Xi Wang and Ran Shi own the property at 3517 Blanca Peak Court, Superior, CO 80027;

(91)    Mark James and Bridgett Anne Weidner own the property at 3107 Cimarron Place, Superior, CO 80027;

(92)    Kyle L. Williams owns the property at 925 Cobalt Way, Superior, CO 80027;

(93)    Minming Wu and Hong Li own the property at 3121 Ruby Way, Superior, CO 80027;

(94)    Michael R. and Ann Marie Younce own the property at 1033 Huron Peak Avenue, Superior, CO 80027; and

(95)    Andrea E. Young owns the property at 928 Maroon Peak Circle, Superior, CO 80027.

## **Venue**

30.    Venue is proper in the Boulder District Court because all of the Properties are located in Boulder County.

## **Factual Allegations**

31.    The following factual allegations are relevant to all Homeowners, Properties, and Homeowners' Airspace.

23

32.     The Properties are a part of Rock Creek Ranch, a planned unit development containing approximately 2,800 residential units located in the Town of Superior, Boulder County, Colorado ("Rock Creek").

33.     The Properties are generally located northwest of the Airport, following in a direct line from the runways at the Airport. The ends of these runways are visible in the bottom right corner of Exhibit A.

34.     The Airport is run by a staff of approximately 25 County employees responsible for the administration, operation, and maintenance of the airfield.

35.     The County has legal authority to exercise the power of eminent domain to acquire property for public use.

36.     The Airport uses federal monies to help fund some of its operations, development, and infrastructure, including multiple federal grants from the Federal Aviation Administration ("FAA").

37.     Because the Airport has this federal financial assistance, the Homeowners will be statutorily entitled to the reimbursement of their "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees actually incurred" if the County is found liable for inverse condemnation through either a court order or a settlement. *See* Colo. Rev. Stat. § 24-56-116 (2023).

### *The Properties Were Previously Burdened by Limited Avigation Easements*

38.     When a developer sought to develop Rock Creek in the late 1980s, the County Authority requested that the developer be required to grant an avigation easement over the entirety of the development.

39.     The developer thereafter agreed, among other things and subject to the express limitations described below, "to grant an Avigation Easement over the entire Rock Creek Ranch boundary."

40.     Between 1991 and 1996, the developer and other property owners granted 29 avigation easements to the County Authority, covering the entire Rock Creek neighborhood.

41.     Each avigation easement was recorded separately and burdened discrete sections of land now containing numerous individual properties, but with otherwise identical terms. *See* Exhibits B–G (six of the prior easements that have since been terminated).

42.     In the now Terminated Easements, the County Authority secured the nonexclusive right to use the airspace above Rock Creek for the passage of aircraft, as well as the right to make noise and vibrations caused by operation of aircraft. *See id.*

43.     In return, the County Authority agreed to certain "limitation events" including, but not limited to, restrictions on the types of flights it would operate, passenger usage, noise contours, and vibration effects. *See id.*

44.     Each easement provided that it "shall remain in effect" unless and until any of these "limitation events" occurred. *See id.*

45.     After the easements were granted, the Rock Creek neighborhood was rezoned and developed with residential homes.

46.     Each of the Homeowners either currently owns or recently sold their property within the Rock Creek neighborhood.

### A Division of this Court Terminated Nine of Twenty-Nine Easements

47.     In October 2020, the Rock Creek Master Homeowners Association, Inc. (the "HOA") sued the County in Boulder County District Court (case number 2020CV30837).

48.     The HOA alleged there that one or more "limitation events" had occurred due to increased operations and noise at the Airport and that all 29 avigation easements encumbering Rock Creek had therefore been terminated.

49.     After a two-day bench trial to Senior District Court Judge Stephen Enderlin Howard the District Court issued its Bench Trial Order on December 23, 2021, attached as **Exhibit H**, in which it ruled that the Airport's conduct amounted to a "limitation event" that would result in the termination of at least some of the easements.

50.     Specifically, the District Court concluded that Limitation D had been triggered. Limitation D provided that such easements would terminate if "[t]he noise contours contained in the Master Plan are exceeded by the sustained operation of aircraft in the Airspace Easement."

51.     As provided in Exhibit H, the District Court found that the easements incorporated noise contour levels from an Airport Master Plan published in 1988 and recognized that "the Ldn 60[1] contour is usually regarded as the critical contour at general aviation airports." The District Court further found that the 1988 Master Plan provided that its contours represented the most severe conditions for both present and future development of the Airport, and it heard testimony that those contours were designed to represent noise levels that would never be exceeded.

52.     The District Court further found that the 60 Ldn Contour included in the 1988 Master Plan did not cover any property in the Rock Creek neighborhood. However, a later Master Plan published in 2000 covered approximately 39 acres of residential property in the Rock Creek neighborhood.

---

[1] This Complaint provides information about Ldn measurements at paragraph 79 *infra*.

53.     Accordingly, because the 60 Ldn Contour in the 2000 Master Plan exceeded the proposed future 60 Ldn Contour provided in the 1988 Master Plan, the District Court concluded that a "limiting event" had occurred, and that easements had terminated on at least some properties in the Rock Creek neighborhood, but that it lacked sufficient evidence to determine which of the easements had terminated.

54.     The parties thereafter submitted a stipulation identifying the easements that had terminated based on the findings and conclusions in the District Court's Bench Trial Order.

55.     The District Court issued a Supplemental Order and Final Judgment on March 24, 2022, attached at **Exhibit I**, terminating the following nine avigation easements:

| Associated Filing Number | Boulder Reception Number | Jeffco Reception Number |
| --- | --- | --- |
| 3 | N/A | 92051546 |
| 10 | N/A | 92051546 |
| 13 | 01227934 | N/A |
| 15 | 01323785 | 93113570 |
| 17A | 01531880 | F0066440 |
| 18 | 01531881 | N/A |
| 19 | 01556192 & 01551661 | N/A |
| 20 | 01556193 & 01551662 | N/A |
| 21 | 01567720 | N/A |

Excerpt from p. 2 of Exhibit L.

56.     All of the Properties fall within these Terminated Easements.

57.     Both parties appealed the District Court's ruling on various grounds. The District Court's judgment was affirmed in its entirety on June 15, 2023, by a division of the Court of Appeals in an unpublished opinion, *Rock Creek Master Homeowners Ass'n, Inc. v. Jefferson Cnty.*, 22CA0602, attached as **Exhibit J**. No further appeals were taken.

58.     As a party to the HOA lawsuit, the County is aware that it no longer has any property right to operate flights through the Homeowners' Airspace following the Court of Appeals Opinion and the expiration of any further appeal period.

### *The County has Continued and Increased its Airport Operations Without Easement Rights*

59.     The Airport has become appreciably busier in recent years, with takeoffs and landings jumping from 170,000 in 2018 to more than 260,000 in 2022, an increase of approximately 53% in only 4 years.

60.     Based on the 2022 numbers, on average, a flight took off or landed every two minutes at the Airport.

61.     Flights operate every day of the year, and the Airport operates 24 hours a day.

62.     The Airport serves commercial, private, military, and medical flights.

63.     The Airport Operations also include jet airplanes, including "public charter" services such as JSX, which began flying 30 passenger jets out of the Airport in the summer of 2022 and which has been steadily increasing its destinations and number of flights since that time. *See* JSX Public Air Charter Service, https://tinyurl.com/e3fhprw3 (last visited December 17, 2023).

64.     In addition to these flights, the Airport has contracted with four flight schools, whose pilots operate repeated training loops through the Homeowners' Airspace and conduct "touch and go" takeoff and landing training operations in a racetrack pattern over the Properties at all hours of the day and night.

65.     Flights from the Airport Operations have been tracked as low as 150-350 feet above the Properties, and Airport Operations routinely include flights within the Homeowners' Airspace.

### *The Airport Operations Cause Lead Particulates from Aviation Fuel to Invade and Contaminate the Properties*

66.     The flight schools and at least some of the commercial, private, military, and medical flights operate piston-engine airplanes.

67.     According to the FAA, aviation gasoline is "the aviation fuel most commonly used in piston-engine aircraft" and "remains the only transportation fuel in the United States to contain lead." *See* Federal Aviation Administration, *Aviation Gasoline*, https://tinyurl.com/4448d8p8 (last visited December 17, 2023).

68.     These emissions cause lead particulates to directly invade the Properties, including the homes, windowsills, vegetable gardens, yards, and land.

69.     The Airport provides leaded fuel to airplanes and accepts incoming aircraft operating on leaded fuel coming from other destinations.

70.     The low-altitude flights from the Airport Operations result in leaded fuel emissions onto the Properties.

71.     Lead exposure causes health hazards, as lead toxicity can damage nearly every organ system in the human body. *See, e.g.*, Centers for Disease Control and Prevention, *Health Effects of Lead Exposure*, https://tinyurl.com/yc69ks8y (last visited December 17, 2023);

Colorado Dept. of Public Health and Environment, *Lead in aviation gas*, https://tinyurl.com/5esfemja (last visited December 17, 2023).

72.     The EPA recently released a regulatory announcement on lead emissions from aircrafts: "Protecting children's health and reducing lead exposure are two of EPA's top priorities. The scientific evidence demonstrates that low levels of lead in children's blood can have harmful effects on cognitive function in children, including reduced IQ and decreased academic performance. There is no evidence of a threshold below which there are no harmful effects on cognition in children from lead exposure." EPA, *EPA Finalizes Endangerment Finding for Lead Emissions from Aircraft that Operate on Leaded Fuel* (October 2023), *available at* https://tinyurl.com/mrye2b46.

73.     The County is aware of the dangers of lead exposure and provides public information to its citizens about such dangers. *See, e.g.*, Jefferson County Public Health, *Lead Prevention*, https://tinyurl.com/3u2ryyyj (last visited December 17, 2023); Jefferson County Public Health, *Preventing Lead Exposure in Children*, https://tinyurl.com/bde3u2w7 (last visited December 17, 2023); Jefferson County Public Health, *What You Need to Know About Lead Poisoning¸* https://tinyurl.com/ytk6n36e (last visited December 17, 2023); Jefferson County Public Health, *Childhood Lead Screening A Guide for Health Professionals¸* https://tinyurl.com/495yxzm9 (last visited December 17, 2023).

74.     In October 2023, in recognition of the harm from lead exposure, the County announced that it intended to begin offering unleaded fuel in the fall of 2024 and entirely transition to unleaded fuel by 2027. *See* Daily Camera, *Jefferson County Airport Announces Full Shift to Unleaded Fuel by 2027*, John Aguilar (October 4, 2023), available at https://www.dailycamera.com/2023/10/04/rocky-mountain-airport-lead-gasoline-noise/. But it is not clear whether or when the County will be able to fully transition its fuel supply.

75.     Unless and until planes using leaded fuel stop operating at the Airport, leaded fuel particulates will continue to invade the Properties.

76.     According to an April 2023 letter from The Town of Superior Board of Trustees, "[r]ecently, nine members of the Superior community have had their homes tested for lead, and all 18 samples, two per household, have come back positive."

77.     Many Homeowners have avoided spending time outdoors because of concerns about lead exposure.

78.     Where a property has a risk of lead contamination, home values plummet. For example, in Flint, Michigan, according to a paper published in the *American Economic Journal: Economic Policy*, property values dropped by 20% or greater and did not recover even after the state spent over $400 million remediating the crisis.

### The Airport Operations Cause Excessive Noise and Vibrations

79.     "Day-night average sound level (DNL) means the 24–hour average sound level, in decibels, for the period from midnight to midnight, obtained after the addition of ten decibels to sound levels for the periods between midnight and 7 a.m., and between 10 p.m., and midnight, local time. The symbol for DNL is $L_{dn}$." 14 CFR § 150.7. Ldn is a noise metric developed by the FAA that purportedly attempts to reflect a person's cumulative exposure to sound over a 24-hour period. It takes into account both the amount of noise from each aircraft operation as measured by A-weighted decibels, ("db(A)"), as well as the total number of operations flying throughout the day and applies an additional 10dB weighting for flights between 10 p.m. and 7 a.m. This information is then used to develop noise contours reflecting cumulative exposure during an annual average day. As such, the Ldn does not measure the specific impact of any single noise event.

80.     An A-weighted decibel is a measure of the relative loudness of sounds as perceived by the human ear, taking into account the frequency of the sound. Decibel measurements are logarithmic, meaning that the sound impact doubles for every three decibels increased.

81.     Planes flying in and within the vicinity of the Homeowners' Airspace and Properties often exceed more than 90 and have exceeded 100 decibels; numerous flights create noise in excess of 60 decibels at ground level.

82.     In addition to the noise and vibrations caused by flights taken by commercial, private, military, and medical aircrafts, the flight schools put pilots on repetitive "touch-and-go" routes where airplanes engage in a looping takeoff and landing flight training, which can include multiple planes flying in the same racetrack pattern over the Properties.

83.     These "touch-and-go" training flights also operate overnight, with many flights occurring between midnight and 5:00 am and with noise exceeding 70-80 decibels at times. Airport Operations also routinely and dramatically increase starting at 5:00 am.

84.     Airport Operations cause Airport Impacts, including deafening, disturbing, and frightening noise and vibrations on the Properties day and night.

85.     Noise from these Airport Operations makes it difficult for Homeowners to sleep, work, study, converse, take work and personal phone calls, concentrate, entertain, spend time in their front or back yards, read, listen to radio or television, or otherwise peacefully enjoy and use their Properties.

86.     Noise from these Airport Operations significantly interferes with sleep and creates additional health risks. *See, e.g.*, N.Y. Times, *Noise Could Take Years Off Your Life. Here's How* (June 9, 2023), https://www.nytimes.com/interactive/2023/06/09/health/noise-exposure-health-impacts.html; Harvard Medicine, *Noise and Health* (Spring 2022), https://magazine.hms.harvard.edu/articles/noise-and-health.

87.     The County is aware that it causes excessive noise and vibrations on the Properties from numerous sources, including, but not limited to, landowner noise complaints; the HOA litigation; correspondence from the Town of Superior; letters from U.S. Senators Michael Bennett and John Hickenlooper and from U.S. Representatives Joe Neguse and Brittany Pettersen.

88.     Through its continued Airport Operations, the County has effectively ignored these harms that it is causing, with Jefferson County Commissioner Tracy Kraft-Tharp saying, "An airport is like a highway—if there is a Harley-Davidson going down that road really loudly, you can't ban all Harley Davidsons."

89.     This may or may not be true for Harley Davidsons on highways—but highways are constructed only after a governmental entity acquires the necessary property rights to build and maintain that highway, which requires the payment of just compensation to landowners for the scope of the rights taken and for the damage caused to landowners' remaining property from motorcycles and other highway impacts.

90.     Here, the County does not own an avigation easement or other property right allowing airplanes to use or to cause noise and vibration on Homeowners' Properties.

***Airport Operations Have Significantly Affected the Value and Marketability of the Properties***

91.     The Airport Operations and Airport Impacts directly and substantially interfere with the Homeowners' use and enjoyment of their Properties, and significantly affect the marketability and value of the Properties.

92.     Some of the Homeowners and other neighbors in Rock Creek who have marketed their properties for sale have had difficulty selling their properties due to the Airport Operations and Airport Impacts.

93.     Properties offered for sale have been sitting on the market for longer than other similar properties not impacted by such activity; some potential buyers have not moved forward after visiting properties; and some properties have been sold below market value.

94.     Regardless of whether offered for sale or not, all of the Properties have diminished in value due to the Airport Operations and Airport Impacts on their Properties and other impacts, even if emanating from the navigable airspace or other nearby properties.

**First Claim for Relief**
**(Inverse Condemnation—Taking of an Avigation Easement)**

95.     All previous allegations are herein incorporated by reference.

96.     Pursuant to the prior easements, the County once had nonexclusive rights to use the Homeowners' Airspace as part of its Airport Operations and to cause on the Properties "all other

effects that may be caused by the operation of aircraft landing at or taking off from or operating at or on the Airport," all subject to certain limiting conditions.

97.     Following the final determination on appeal affirming the District Court's decision that was entered on June 15, 2023, it became clear that the County's property rights to use the Homeowners' Airspace would not continue to exist, nor would the County have the right to cause other impacts to the Properties.

98.     The County knows that it has no property right to use the Homeowners' Airspace or to invade, occupy, or cause impacts on the Properties.

99.     Nonetheless, the County intentionally continues to use the Homeowners' Airspace and to otherwise burden the Properties as though the Terminated Easements were still in full force and effect.

100.    The County has also intentionally increased use of and burdens on Homeowners' Airspace and Properties even after the District Court and Court of Appeals rulings; the County is projected to further increase its Airport Operations each year.

101.    Each of the Homeowners has a constitutionally protected property interest in the Homeowners' Airspace and to use and enjoy their Properties free from unreasonable impacts and intrusions.

102.    The County has the power of eminent domain but has failed or refused to exercise that power to acquire an avigation easement or any other property right to use the Homeowners' Airspace or to invade or occupy the Properties.

103.    The County's development, operation, and maintenance of the Airport is a public improvement for a public use.

104.    The County's design, development, construction, installation, control, and operation of the Airport and the flights operating from it constitute a public use.

105.    The County's continued and consistent use of the Homeowners' Airspace and other impacts caused to the Properties by the Airport Operations substantially impair the Homeowners' use and enjoyment of their Properties and constitute the taking of an avigation easement over each Property.

106.    The taking of such avigation easement was accomplished without the payment of just compensation, in contravention of Colo. Const. art. II, § 15.

107.    The taking of such avigation easement was obtained without Homeowners' consent, for a public purpose, and without any compensation to Homeowners.

108.    Due to these unreasonable, unlawful, and adverse actions of the County, the Homeowners suffer and will continue to suffer damages resulting from the taking of their Properties, including, but not limited to, significant impacts to the marketability and value of their Properties.

109.    The Homeowners are entitled to just compensation for the value of the avigation easements taken, including, but not limited to, the fair market value of the rights taken; damages to their remainder property that result from that taking; remediation costs or other costs to cure; attorney fees, expert expenses, litigation costs, and interest as permitted by Colorado law; and all other relief that is just and proper.

110.    The Homeowners accordingly request that this Court find that the County has taken an avigation easement, define the scope of that avigation easement, and award just compensation and damages in an amount to be proven at a valuation trial.

### Second Claim for Relief
### (Inverse Condemnation—Taking by Physical Occupation of the Homeowners' Airspace by Low Flights and of the Properties by Lead Contamination)

111.    All previous allegations are herein incorporated by reference.

112.    Even if the County had never previously held avigation easements over the Properties and even if the Court does not directly find that the County has taken a new avigation easement, the County's ongoing and increasing Airport Operations are a physical invasion and occupation of the Homeowners' Airspace and Properties that constitute a taking without payment of just compensation.

113.    The County knows it has no property right to use the Homeowners' Airspace or to cause any Airport Impacts on the Properties due to the Airport Operations, including any right to operate flights within Homeowners' Airspace or to cause lead contamination to physically invade and occupy the Properties.

114.    Nonetheless, the County knowingly and intentionally operates flights that routinely invade the Homeowners' Airspace and cause noise, vibrations, and other Airport Impacts to the Properties.

115.    The County also knowingly and intentionally operates flights using leaded fuel through and above the Homeowners' Airspace, which directly result in leaded fuel particulates physically invading and occupying the Properties.

116.    Homeowners have a constitutionally protected property interest in the Homeowners' Airspace, which is owned by the Homeowners, as well as in keeping the surfaces of their Properties free from lead contamination and other physical occupations or invasions.

117.    The County has the power of eminent domain but has failed or refused to exercise that power to acquire an easement or other property right allowing it to use the Homeowners' Airspace or to cause any impacts on the Properties.

118.    The physical occupation of the Properties by airplanes invading the Homeowners' Airspace, as well as by lead particulates occupying the Properties, substantially impairs Homeowners' use and enjoyment of the Properties and constitutes a taking of property rights within the Properties.

119.    This taking was accomplished in contravention of Colo. Const. art. II, § 15.

120.    The County's taking of Homeowners' property rights was done without Homeowners' consent, for a public purpose, and without any compensation to Homeowners.

121.    Due to these unreasonable, unlawful, and adverse actions of the County, Homeowners suffer and will continue to suffer damages resulting from the taking of property rights within their Properties, including, but not limited to, significant impacts to the marketability and value of the Properties.

122.    The Homeowners are entitled to just compensation for the value of the property rights taken, including, but not limited to, the fair market value of the rights taken; damages to their remainder property that result from that taking; remediation costs or other costs to cure; attorney fees, expert expenses, litigation costs, and interest as permitted by Colorado law; and all other relief that is just and proper.

123.    The Homeowners accordingly request that this Court find that the County has taken property rights within the Properties and award just compensation and damages in an amount to be proven at a valuation trial.

### Third Claim for Relief
### (Inverse Condemnation—Damaging of the Properties)

124.    All previous allegations are herein incorporated by reference.

125.    Damages to the Homeowners' remaining interests in their Properties caused by Airport Impacts should be included as part of the just compensation owed for the taking of property interests in the Homeowners' Airspace and Properties as alleged above, because such damages are the direct and proximate result of those takings, and because the Airport Operations off of the Properties are integrated and inseparable from the Airport Operations on the Properties. Accordingly, the Homeowners are entitled to compensation for all such impacts, whether or not they are deemed "special" or "unique" as those terms are used in Colorado law.

126.    And, even if some of the impacts to the Properties are caused by Airport Operations that do not amount to a taking of property, the Homeowners still have a constitutionally protected

interest in their Properties being free from Airport Impacts and to the reasonable use and enjoyment of their Properties.

127.     Colo. Const. art. II, § 15 provides greater protections to property owners than the U.S. Constitution by allowing just compensation to be awarded to property owners for both direct taking of their properties *and* for the damaging of their properties caused by public improvements and activities on other properties, even in circumstances where there is no taking of their own property.

128.     The Airport Impacts alleged above have caused physical harm to the Properties and the Homeowners and have caused substantial damages to the Properties by affecting rights and interests that are not shared with the public generally, and that are different in kind, not just degree from those suffered by other members of the public.

129.     The Airport Operations and Airport Impacts unreasonably interfere with the Homeowner's use of their Properties in so substantial of a way as to deprive the Homeowners of the practical enjoyment of their Properties.

130.     Such interferences are of sufficient directness, peculiarity, and magnitude that fairness and justice, as between the County and the Homeowners, requires the burden imposed to be borne by the public through the payment of just compensation.

131.     The allegations in paragraphs 126-130 are further supported by the following:

(1) Through its order identifying the Terminated Easements, Exhibit I, the District Court distinguished the Properties at issue in this litigation, where impacts from the Airport Operations were deemed significant enough to constitute a limiting condition causing those prior easement rights to revert back to the Homeowners. By contrast, other properties within Rock Creek remain encumbered by avigation easements. The noise levels on the Properties continue to be louder than the Terminated Easements once permitted.

(2) As explained above and in Exhibit H, the permissible noise levels from Airport Operations on the Properties exceed the scope of what was originally permitted by the easements that once burdened the Properties. The noise events experienced on the Properties routinely exceed 60 decibels, often exceed 90 decibels, and have exceeded 107 decibels. This causes difficulty for Homeowners to converse, study, work, take work and personal phone calls, concentrate, entertain, spend time in their front or back yards, read, listen to radio or television, and sleep. To guard against these noise events, Homeowners would need to undertake significant expenses, such as installing soundproofing measures and other remediation measures, and even these measures would not fully mitigate the impacts of the noise events.

(3) Science has developed over the past two decades to show that consistent exposure to noise causes deleterious health effects. Noise and vibrations also negatively affect property values, including the value of the Properties.

(4) Likewise, as alleged above, the flights cause lead contamination on the Properties. Homeowners and their guests are limited in their ability to use and enjoy the outdoor spaces of their properties, such as front and back yards. Homeowners also fear that their kitchen gardens may be contaminated with lead. Lead and other forms of contamination also negatively affect property values, including the value of the Properties. To combat this contamination, Homeowners would need to take expensive measures, including, but not limited to, performing tests of their soil, home exteriors, and kitchen gardens, and to remediate the lead as possible.

132.    The noise, vibrations, and lead contamination caused by the Airport Operations and Airport Impacts substantially impairs and interferes with Homeowners' use and enjoyment of the Properties and constitutes a damaging of those Properties.

133.    The interference by the County with Homeowners' use and enjoyment of the Properties due to Airport Impacts including noise, vibration, and lead contamination is so substantial that it is offensive, inconvenient, and annoying to any reasonable person in the community.

134.    The interference by the County with Homeowners' use and enjoyment of the Properties due to Airport Impacts including noise, vibration, and lead contamination is negligent or intentional.

135.    The County knows that it has no property right to cause excessive noise and vibrations on the Properties and knows that the Airport Operations causes such Airport Impacts including noise and vibrations.

136.    Likewise, the County knows that it has no property right to cause lead contamination by lead particulates on the Properties and knows that the Airport Operations cause such lead contamination.

137.    Nonetheless, the County continues the Airport Operations.

138.    The Airport has the power of eminent domain but has failed or refused to exercise that power to acquire any rights to cause noise, vibrations, or lead contamination on the Properties.

139.    The Airport Operations and Airport Impacts constitute a damaging of the Properties in contravention of Colo. Const. art. II, § 15.

140.    The County's damage to the Properties is being done without Homeowners' consent as part of Airport Operations serving a public purpose, and without any compensation to Homeowners.

141.    Due to these unreasonable, unlawful, and adverse actions of the County, Homeowners suffer and will continue to suffer damages resulting from the damaging of their Properties, including, but not limited to, significant impacts to the marketability and value of the Properties.

142.    The Homeowners are entitled to just compensation for the damaging of their Properties, including, but not limited to, the diminution in value caused to the Properties; stigma effects; remediation costs or other costs to cure; attorney fees, expert expenses, litigation costs, and interest as permitted by Colorado law; and all other relief that is just and proper.

143.    Homeowners accordingly request this Court find that the Airport has caused a damaging of the Properties and award just compensation and damages in an amount to be proven at the valuation trial.

## Prayer for Relief

WHEREFORE, Homeowners respectfully request that this Court:

A.  Find and determine that a taking and damaging of the Properties has occurred, describing with particularity the date of such taking and damaging, and further describing with particularity the scope of the rights in the Properties that have been taken and damaged by the County.

B.  Require the County to pay just compensation to each Homeowner pursuant to the provisions of Colo. Const. art. II, § 15, C.R.S. § 24-56-116, and other applicable laws relating to the taking or damaging of property for public use.

C.  Require the County to pay interest as provided by law pursuant to the provisions of Article I, Title 38 of C.R.S and other applicable law.

D.  Require the County to pay all Homeowners' attorney fees and litigation costs incurred by the Homeowners in pursuing this proceeding to establish a taking and damaging of their Properties and to determine the just compensation they are owed as are appropriate under law including, but not limited to, all of Homeowners' court costs, deposition costs, witness fees, expert witness fees, consultant fees, appraisal costs, attorney fees, and any other litigation expenses which are otherwise appropriate for the County to pay Homeowners in eminent domain proceedings pursuant to C.R.S. § 24-56-116, and other applicable law.

E.  Grant such other and further relief that the Court deems appropriate.

## Jury Demand

If the Court determines that there has been a taking and/or damaging of Homeowners' Properties, Homeowners hereby elect a trial to a jury of six freeholders to determine the just compensation owed.

Respectfully submitted this 21st day of December 2023.

FAEGRE DRINKER BIDDLE & REATH LLP


*/s/ John R. Sperber*
John R. Sperber, No. 22073
Sean J. Metherell, No. 47438
Rebecca A.R. Smith, No. 52501

Attorneys for Plaintiffs


Addresses for Plaintiffs' respective property interests (pp. 8–23)
Please direct all correspondence to counsel at the following address:
Faegre Drinker Biddle & Reath LLP
1144 15th Street, Suite 3400
Denver, CO 80202


*In accordance with C.R.C.P. 121 §1-26(7) a printed or printable copy of this document with original, electronic, or scanned signatures is being maintained by the filing party and will be made available for inspection by other parties or the court upon request.*