**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-00157-DDD-STV

DREW PHILLIP FULLER, et al.

    Plaintiffs,

v.

JEFFERSON COUNTY, COLORADO,

    Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Plaintiffs' Motion to Remand [#20], Defendant's Motion to Dismiss [#24], and Defendant's Motion to Consolidate Cases [#32] (collectively, the "Motions"). The Motions have been referred to this Court. [## 22, 26, 33] The Court has considered the Motions and related briefing, the entire case file, and the applicable case law, as well as oral argument held on the Motion to Consolidate Cases. [#38] For the following reasons, this Court respectfully **RECOMMENDS** that the Motion to Remand be **GRANTED**, that this case be remanded to the District Court of the County of Boulder, Colorado, and that the Motion to Dismiss and the Motion to Consolidate Cases not be acted upon by this Court as it lacks jurisdiction to do so.

**I.    FACTUAL BACKGROUND**

    Defendant, Jefferson County, Colorado, owns and operates the Rocky Mountain Metropolitan Airport (the "Airport"). [#5 at ¶ 3] The Airport is the third-busiest airport in

1

Colorado, averaging a takeoff or landing every two minutes.  [*Id.* at ¶ 4]  Plaintiffs are individual homeowners whose properties (the "Properties") are located within Rock Creek Ranch, a planned unit development located northwest of the Airport.  [*Id.* at ¶¶ 1, 32, 33]  Through its Airport, Defendant engages in flight operations through, over, and across the Properties.  [*Id.* at ¶ 5]

According to the Complaint, Plaintiffs own the airspace up to 1000 feet above their Properties.  [*Id.* at ¶ 7]  The Rock Creek Ranch developer had granted an avigation easement above the Properties which allowed the Jefferson County Airport Authority (the "County Authority"), the operator of the Airport that preceded Defendant, a nonexclusive right to use the airspace above Rock Creek Ranch.  [*Id.* at ¶¶ 3, 38-42]  In exchange, the County Authority agreed to certain "Limitation Events" which included restrictions on the types of flights it would operate, passenger usage, noise contours, and vibration effects.  [*Id.* at ¶ 43]  The easements provided that they would remain in effect unless a Limitation Event occurred.  [*Id.* at ¶ 44]

In October 2020, the Rock Creek Master Homeowners Association, Inc. (the "HOA") sued Defendant in Boulder County District Court alleging that there was more than one Limitation Event and that the avigation easements encumbering Rock Creek had been terminated.  [*Id.* at ¶¶ 47-48]  On December 23, 2021, following a bench trial, Senior District Court Judge Stephen Enderlin Howard issued a Bench Trial Order concluding the Airport's conduct amounted to a Limitation Event, thereby terminating at least some of the easements.  [*Id.* at ¶¶ 49-50, 53]  The parties thereafter submitted a stipulation identifying the easements that had terminated based upon the findings and conclusions in Judge Howard's Bench Trial Order (the "Terminated Easements"), and

2

on March 24, 2022, Judge Howard issued a Supplemental Order and Final Judgment terminating the Terminated Easements.[1]  [*Id.* at ¶¶ 54-55]  All of the Properties fall within the Terminated Easements.  [*Id.* at ¶ 56]

On December 21, 2023, Plaintiffs filed the instant action in Boulder County District Court.  [#5]  Plaintiffs allege that Defendant has continued (and even expanded) its airport operations as though the Terminated Easements were still in full legal force and effect and has neither sought new easements nor compensated Plaintiffs for the continued airport operations.  [*Id.* at ¶¶ 9-17, 59-94]  Plaintiffs bring three claims for inverse condemnation.  [*Id.* at ¶¶ 95-143]  They seek a ruling from the Court that interests in their Properties have been taken and damaged and request compensation for that damage.  [*Id.* at ¶ 19; *id.* at 36]

On January 18, 2024, Defendant removed the matter to this Court asserting that Plaintiffs' claims are completely preempted by federal law and raise a substantial federal question.  [#1]  On February 14, 2024, Plaintiffs filed the Motion to Remand arguing that their claims are not completely preempted, the Court therefore lacks subject matter jurisdiction, and the matter must be remanded to the Boulder County District Court.  [#20]  Defendant has responded to the Motion to Remand [#27] and Plaintiffs have replied [#30].  On February 21, 2024, Defendant filed its Motion to Dismiss arguing that: (1) Plaintiffs' claims are barred by the statute of limitations, (2) the Complaint fails to allege a factual basis for the inverse condemnation claims, (3) Plaintiffs' claims related to noise levels are preempted by the Airport Noise and Control Act, 49 U.S.C. § 47521, *et seq.* ("ANCA"), and (4) Plaintiffs' challenges to the use of

---

[1] Judge Howard's ruling was affirmed on appeal.  [*Id.* at ¶ 57]

3

leaded fuel at the Airport are preempted by the Airport and Airway Improvement Act, 49 U.S.C. § 47107 ("AAIA"). [#24] Plaintiffs have responded to the Motion to Dismiss [#28] and Defendant has replied [#29]. Finally, on April 9, 2024, Defendant filed its Motion to Consolidate, seeking to consolidate the instant matter with Case No. 1:24-cv-00951-CNS-STV (the "951 Matter"), a nearly identical inverse condemnation case brought by other homeowners seeking compensation for damage to their property arising out of operations at the Airport. [#32] Plaintiffs responded to the Motion to Consolidate [#36] and Defendant replied [#37]. On May 20, 2024, this Court held an oral argument on the Motion to Consolidate and took the Motion to Consolidate under advisement. [#38]

## II.  LEGAL STANDARDS

### A.  Preemption

A district court may exercise federal question jurisdiction over any action "arising under" federal law. 28 U.S.C. § 1331. A case arises under federal law when the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). Pursuant to the "well-pleaded complaint" rule, "federal jurisdiction can only exist where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Colorado ex rel. Salazar v. Ace Cash Exp., Inc.*, 188 F. Supp. 2d 1282, 1283–84 (D. Colo. 2002) (citing *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir.2000)). If the plaintiff's complaint demonstrates that the case

4

"'arises under' federal law," the defendant may remove the case to federal court. *Franchise Tax Bd.*, 463 U.S. at 10.

"Federal pre-emption is ordinarily a federal defense to the plaintiff's suit." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Accordingly, federal pre-emption typically "does not appear on the face of a well-pleaded complaint," and would not "authorize removal to federal court." *Id.* *Complete* pre-emption, on the other hand, may justify removal. *Id.* at 63-64. Complete pre-emption is an independent corollary or exception to the well-pleaded complaint rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Devon Energy Production Co. v. Mosaic Potash Carlsband, Inc.*, 693 F.3d 1195, 1204 (10th Cir. 2012); *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996). The doctrine applies when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life*, 481 U.S. at 65). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law," and the claim is removable. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "[T]he 'complete preemption' doctrine should be applied sparingly, and the case should be remanded [to state court] absent clear congressional intent to create removal jurisdiction." *Ace Cash*, 188 F. Supp. 2d at 1284 (citing *Schmeling*, 97 F.3d at 1342); *see also Anderson v. Lehman Bros. Bank*, 528 F. App'x 793, 795 (10th Cir. 2013) ("There is a presumption against removal jurisdiction . . . and the party seeking removal has the burden of proof to establish jurisdiction." (citations omitted)). "The

5

circumstances are so rare in fact that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act." *Devon*, 693 F.3d at 1204-05.

Determining whether complete preemption exists is a two-part analysis in which the court asks: (1) whether "the federal question at issue preempts the state law relied on by the plaintiff," and (2) "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action." *Dutcher v. Matheson*, 733 F.3d 980, 985-86 (10th Cir. 2013) (quoting *Devon*, 693 F.3d at 1205). Generally, the court will address the second prong of the analysis first because "[t]he existence of a potential federal cause of action is critical; complete preemption is not the same as preemption." *Id.* at 986. Federal law must "*substitute[]* a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Devon*, 693 F.3d at 1205 (emphasis added) (quoting *Schmeling*, 97 F.3d at 1342).

B.   **Substantial Federal-Question Jurisdiction**

The Supreme Court has instructed that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This is true "[e]ven though state law creates [a plaintiff's] causes of action" because a "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*,

6

463 U.S. at 13. But this circumstance describes a "special and small category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

A federal court can exercise federal-question jurisdiction over an action that pleads only state-law claims if those claims "require[ ] resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13. In *Grable*, the Supreme Court explained that the relevant question is: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. "Like complete preemption, '[t]he "substantial question" branch of federal question jurisdiction is exceedingly narrow.'" *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1257 (10th Cir. 2022) (quoting *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012)). "It is not triggered by a 'mere need to apply federal law in a state-law claim.'" *Suncor Energy*, 25 F. 4th at 1257 (quoting *Grable*, 545 U.S. at 313). "Nor can it be triggered solely by a federal defense, in keeping with the well-pleaded complaint rule." *Id.*

**C.     Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or

7

conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

    D.    **Consolidation**

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). The decision whether to consolidate actions involving common questions of law or fact is committed to the sound discretion of the district court. *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978). The purpose of Rule 42(a) is "to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing

justice to the parties." *Breaux v. Am. Family Mut. Ins. Co.*, 220 F.R.D. 366, 367 (D. Colo. 2004).

### III.   ANALYSIS

Here, Defendant alleges that this Court's jurisdiction is premised upon the ANCA and the AAIA. [#1 at 4]  Specifically, Defendant argues that "[r]emoval is authorized because the claims for inverse condemnation raised in the Complaint are completely preempted by the AAIA and the ANCA, as well as the regulations promulgated and enforced by the U.S. Federal Aviation Administration ("FAA") to administer, implement, and enforce those statutes." [*Id.*; *see also* #27 11-14]  Defendant also argues that jurisdiction is proper because Plaintiffs' state law claims implicate substantial federal questions. [#27 at 7-11] The Court addresses each argument below.

#### A.   Complete Preemption

Defendant argues that Plaintiffs' claims are completely preempted by federal aviation laws. [#27 at 11-14]  The Seventh Circuit faced a nearly identical question more than thirty-five years ago.  In *Bieneman v. City of Chicago*, the plaintiff commenced a class action suit in federal court against the City of Chicago alleging that he and other northern Illinois property owners had been affected by noise from O'Hare Airport.  864 F.2d 463, 464 (7th Cir. 1988).  His complaint alleged a deprivation of property without due process, a takings claim, and various state law claims.  *Id.*  After finding for the City of Chicago on the plaintiff's federal claims, the district court held that the pendent state law claims had all been preempted by federal statutes and regulations. *Id.* at 464-65.

9

On appeal, the Seventh Circuit agreed that the plaintiff's federal claims failed. *Id.* at 466-70. The Seventh Circuit then turned to the plaintiff's state law claims. The Seventh Circuit first acknowledged that it had previously held that:

> Since the federal laws and regulations have preempted local control of aircraft flights, *Burbank* [*v. Lockheed Air Terminal, Inc.*, 411 U.S. 624], the defendants may not, to the extent they comply with such federal laws and regulations, be charged with negligence or creating a nuisance. Similarly, § 114.04 of the Wisconsin Statutes cannot be invoked to make unlawful flights which are in accordance with federal laws and regulations. . . . To the extent that the County may be violating the federal laws or regulations, the plaintiffs should . . . exhaust their administrative remedies.

*Id.* 470 (quoting *Luedtke v. Cnty. Of Milwaukee*, 521 F.2d 387, 391 (7th Cir. 1975)). The Seventh Circuit continued, however, that "[s]ince *Luedtke* every court that has examined the question independently has come to the opposite conclusion." *Id.* (collecting cases). Given the contrary authority, the Seventh Circuit decided to revisit *Luedtke* and concluded that it was wrongly decided. *Bieneman*, 864 F.2d at 471-73.

The *Bieneman* Court gave three reasons for this conclusion. First, it noted that the Federal Aviation Act did not expressly preempt state damages remedies, which cuts against preemption. *Id.* at 471. Next, it noted that state courts award compensation for takings in inverse condemnation cases, and state courts routinely award compensation in air crash cases. *Id.* at 471. Thus, "[i]f damages are available for takings, and common law remedies are available on questions of fraud and safety, [there is no reason state courts cannot decide] questions of noise and chemical emissions." *Id.*

Finally, the *Bieneman* Court concluded that the *Luedtke* Court erroneously relied upon the Supreme Court's decision in *Burbank*.[2] The *Bieneman* Court noted that

---

[2] Defendant likewise relies on *Burbank* for the proposition that "'the pervasive nature of the scheme of federal regulation of aircraft noise' ha[s] completely preempted the

*Burbank* dealt with a city curfew that forbid departures from an airport during certain hours, which "directly regulated the airport's operations, interfering with the Federal Aviation Administration's contrary judgment."[3]  *Id.*  In contrast, the plaintiff in *Bieneman* sought damages, not regulation. *Id.* at 472.  While recognizing that "[p]erhaps this [wa]s a distinction without a difference," the *Bieneman* Court nonetheless determined that Supreme Court precedent recognized the distinction.  *Id.*  Specifically, the *Bieneman* Court noted that the Supreme Court has held that "federal law occupies the field of nuclear safety regulation" yet "federal law does not preempt common law remedies concerning nuclear safety."  *Id.* (citing *Pac. Gas & Elec. Co. v. State Energy Conservation & Dev. Comm'n*, 461 U.S. 190 (1983)).  Thus, if no preemption is the conclusion for nuclear safety legislation, "it must be the appropriate treatment for air travel as well." *Bieneman*, 864 F.2d at 472.

Despite ruling that federal law did not completely preempt the field of air travel, the *Bieneman* Court was careful to note the limits of its ruling.  According to the Court:

> A word on what this means.  Bieneman wants common law remedies, but these must be remedies for *wrongs,* as in [*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984)]*,* or for those aspects of airport operation within the state's control as proprietor under *Burbank.*  Federal law governs much of the conduct of O'Hare and its carriers. *See* 14 C.F.R. Part 36 (noise characteristics of aircraft), Part 150 (noise abatement procedures at airports).  A state court could not award damages against O'Hare or its users for conduct required by these regulations, or for not engaging in

---

states' traditional police power to regulate noise in that area" and therefore "'the 1972 [Noise Control] Act seems to [the Supreme Court] to leave no room for local curfews or other local controls.'" [#27 at 9 (quoting *Burbank*, 411 U.S. at 633, 638)]

[3] Several of the cases cited by Defendant likewise involve local ordinances that impacted flight operations. [#27 at 9 (citing *Friends of the E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 136 (2d Cir. 2016); *Pirolo v. City of Clearwater*, 711 F.2d 1006, 1008 (11th Cir. 1983); *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1308 (9th Cir. 1981))]  Thus, like *Burbank*, these cases are readily distinguishable.

11

>   noise-abatement procedures that the Federal Aviation Administration considered but rejected as unsafe. Bieneman's complaint suggests that damages should be awarded because there are too many flights per hour, or because the aircraft are older models not fitted with high-bypass turbofan engines, or because the planes do not climb at a sufficiently steep rate after takeoff. These subjects are governed by federal law, and a state may not use common law procedures to question federal decisions or extract money from those who abide by them. There may be, on the other hand, aspects of O'Hare's operations that offend federal law, or that federal norms do not govern. Perhaps, as Bieneman insists, the airport does not use adequate noise baffles around the perimeter of the airport, or perhaps it has built more runways than federal law requires (to the detriment of those under the new ones), or is out of compliance with the governing federal rules. The essential point is that the state may employ damages remedies only to enforce federal requirements (as in *Silkwood*) or to regulate aspects of airport operation over which the state has discretionary authority.

*Id.* at 472-73. Thus, while some claims related to airport operations may indeed be preempted by federal law, complete preemption related to air traffic does not exist and plaintiffs "may pursue [their] state-law contentions [related to air traffic] in state court." *Id.* at 473.

As indicated earlier, the *Bieneman* decision was consistent with every court to have previously addressed the preemption issue. *Id.* at 470 (collecting cases). And since *Bieneman*, courts have consistently concluded that federal law does not completely preempt claims like those asserted by Plaintiffs in this case. *See, e.g.*, *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 401-05 (7th Cir. 2001) (holding that the district court should have remanded the plaintiff's inverse condemnation suit related to airport activity because, while the plaintiff's claims may be preempted by federal law, complete preemption did not exist and the matter was thus improperly removed from state court); *Bearse v. Port of Seattle*, No. C09-0957RSL, 2009 WL 3066675, at *3 (W.D. Wash. Sept. 22, 2009) (remanding claim for damages and injunctive relief

12

resulting from increased flight traffic at SeaTac airport because state law claims were not completely preempted); *Denzik v. Reg'l Airport Auth. Of Louisville & Jefferson Cnty.*, 361 F. Supp. 2d 659, 663-64 (W.D. Ky. 2005) (remanding trespass, nuisance, invasion of property, and intentional infliction of emotional distress claims related to airplane activity over the plaintiff's property because, while federal preemption may apply to some of the plaintiff's claims, complete preemption did not apply); *City of Tipp City v. City of Dayton*, 204 F.R.D. 388, 391-94 (S.D. Ohio 2001) (finding "no basis" for concluding that the plaintiffs' airport noise nuisance claim was completely preempted by federal law). The Court finds these cases persuasive. Indeed, Defendant has not cited a single case in which a court found complete preemption of a claim like those asserted by Plaintiffs. [#27 at 11-14] Accordingly, the Court concludes that complete preemption does not apply.

### B.   Substantial Federal-Question Jurisdiction

Defendant also argues that jurisdiction is proper under *Grable* because Plaintiffs' state law claims implicate substantial federal questions. [#27 at 7-11] But as explained above, *Grable* jurisdiction "is not triggered by a 'mere need to apply federal law in a state-law claim.'" *Suncor Energy*, 25 F. 4th at 1257 (quoting *Grable*, 545 U.S. at 313). "Nor can it be triggered solely by a federal defense, in keeping with the well-pleaded complaint rule." *Id.*

Here, Plaintiffs' well-pleaded complaint does not implicate a substantial federal question. [#5] Rather, the federal question appears to arise solely from Defendant's anticipated defense—namely, that the plaintiffs' claims are preempted by federal law. #27 at 10] But, again, the fact that the Boulder County District Court may need to apply

federal law to analyze Defendant's preemption defense does not trigger *Grable* jurisdiction.  *Suncor Energy*, 25 F. 4th at 1257.

This case is thus very different from *City of Tipp City*, relied upon by Defendant. [#27 at 8-9]  There, the complaint involved allegations that the defendant failed to comply with FAA orders and thus was acting in violation of federal law.  204 F.R.D. at 395.  As a result, the court concluded that it "*may* have subject matter jurisdiction over [the plaintiff's] claims if they require resolution of a substantial question of federal law." *Id.* (emphasis added).  This was because the court may need to determine whether the FAA's orders had been violated—an issue raised on the face of the complaint.  *Id.*  In contrast here, no such federal question is raised on the face of Plaintiffs' complaint, making *City of Tipp City* readily distinguishable.  Thus, the Court concludes that it does not have substantial federal-question jurisdiction under *Grable* and its progeny.

C. **Conclusion**

It may well be that some or even all of Plaintiffs' claims are preempted by federal aviation law.  But neither complete preemption nor substantial federal-question jurisdiction apply.  Thus, the Court concludes that the question of whether Plaintiffs' claims are preempted by federal law should be decided by the Boulder County District Court.  Accordingly, the Court respectfully RECOMMENDS that the Motion to Remand be GRANTED and that the Motion to Dismiss and the Motion to Consolidate Cases be decided by the Boulder County District Court.[4]

---

[4] Plaintiffs seek fees and costs pursuant to 28 U.S.C. § 1447(c), arguing that removal was objectively unreasonable.  [#20 at 14]  The Court disagrees.  While the bulk of the authority supports remand, there is no clear Tenth Circuit authority on point and the Court cannot conclude that removal was so objectively unreasonable as to warrant fees and costs.

IV.  **CONCLUSION**

For the foregoing reasons, there is no federal question presented on the face of the Plaintiffs' Complaint, the complete preemption doctrine does not apply, and this matter was improperly removed to federal court because this Court lacks subject matter jurisdiction over Plaintiffs' claims.  Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Remand [#20] be **GRANTED** and that the Motion to Dismiss [#24] and the Motion to Consolidate Cases [#32] not be acted upon by this Court but instead be decided by the District Court of the County of Boulder, Colorado.[5]

DATED:  June 4, 2024

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).